ROYAL BANK OF CANADA, PLAINTIFF AND APPELLEE, v. BALLE, DEFENDANT AND APPELLANT.

APPEAL from the First District Court of San Juan in an Action of Debt.

No. 3312.—Decided February 18, 1925.

NEGOTIABLE INSTRUMENTS—LAW APPLICABLE—BLANK INDORSEMENT—PAYMENT TO ONE NOT THE HOLDER.—Actions on negotiable instruments are governed by the law of the place where the bill is drawn, of the place where it is to be paid or of the place where the action is brought, according to circumstances. If the indorsement of a bill of exchange is involved, as it is a contract independent of the bill, the law of the place of indorsement must govern and when under it the sole signature of the indorser is a valid indorsement which conveys the ownership of the bill to the holder, payment thereof to another person does not extinguish the obligation of the drawee who has accepted the bill.

ID.—INDORSEMENT—PAYMENT AS DEFENSE—AUTHORITY TO RECEIVE PAYMENT.—When a drawee who has accepted a bill of exchange alleges in defense of an action brought by the holder that the undated indorsement is sufficient to convey ownership and that he had paid the bill to the corporation which was the original payee, he must show that the person to whom he made payment had authority to receive the money in the name of the corporation.

The facts are stated in the opinion.

*Mr. J. Martínez Dávila* for the appellant.

*Messrs. Chas. Hartzell* and *F. Ramírez de Arellano* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The Royal Bank of Canada, a corporation organized under the laws of Canada and authorized to do business in this Island, brought an action against Bernardo Balle, a resident

of San Juan, P. R., to recover $497.17, the amount of a draft which, as appears from the transcript, reads as follows:

"Edward Jolles Company, Inc.—No. 3496.—Exchange for $497.17 U. S. Currency New York June 12, 1920.—Ninety days after date of this First of Exchange (Second Unpaid) Pay to the order of Ourselves Four Hundred Ninety Seven and 17/100 Dollars U. S. Currency.—Payable at the Collecting Bank's Rate for Sight Draft of New York.—Value received, and charge the same to account of

(Signed)      Edward Jolles Company, Inc.,
                              R. S. Rubinstein, Sec'y.
"To Mr. Bernardo Balle,
          San Juan, Porto Rico.

"(On the back): Edward Jolles Company, Inc.—R. S. Rubinstein.—Payable December 15, 1920.—(Signed) Bernardo Balle."

Eduardo Soler, the teller in charge of the collection department of the plaintiff bank, testified at the trial as follows:

"We received for collection a draft from our New York agency drawn by Edward Jolles & Co., Inc., against Bernardo Balle. Mr. Balle accepted the draft for payment on December 15th. At maturity we presented the draft to Mr. Balle, but he did not pay it and after several weeks we returned it to New York. The New York agency returned it saying that Balle would have to pay because they had been unable to collect the money. As Balle refused to pay, we passed it to our attorney for collection."

The defendant admits that he accepted the draft, but alleges that he paid it to the treasurer of Edward Jolles & Co., Inc., in San Juan, P. R., in January of 1921.

At the trial the defendant introduced a deposition of Morris Aronowitz, a former employee of Edward Jolles & Co., Inc., of New York. Upon being shown the document transcribed the witness said:

"Yes, I remember. We left the bank [*sic*] together with Mr. Balle and Mr. Rubinstein to take up a draft for the amount of that check and the bankers said that they had returned the draft * * * When the bank told Balle that the draft had been re-

turned Mr. Rubinstein told Balle in the presence of the witness to pay him the amount of the draft, saying that upon his arrival in New York he would send the draft to him.''

The witness goes on to say that Rubinstein was the ''Secretary of the said corporation (Edward Jolles & Co., Inc.), but is not sure whether he also acted as Treasurer.''

That deposition and the following letter were the only evidence introduced by the defendant:

''Trianon Hotel.—Consulado No. 3, Habana, Cuba.—June 3, 1921.

''Dear Mr. Balle: As written to you in my previous letter I am now in Cuba on business for the firm. Consequently your letter had to be forwarded to me from New York and therefore the delay in answering.

''I was surprised to read that the Royal Bank of Canada had threatened to bring suit against you if you did not make payment to them of the item for $497.17 which adjustment was duly reported to the Edward Jolles Co. who in turn notified the bank.

''I have already written to New York requesting that this matter be immediately adjusted and as soon as sufficient time has passed for the exchange of letters believe that you will not be further troubled in this connection.

''Exceedingly regretting the inconvenience caused you by this misunderstanding and hoping that business is improving with you and that you are able to meet your obligations promptly, I beg to remain,

Very truly yours,
(Signed)     R. S. Rubinstein.''

The court took the case under advisement and on September 28, 1923, rendered judgment sustaining the complaint.

The defendant appealed and assigns as error the weighing of the evidence by the court and the conclusion that it is sufficient to support the complaint.

The foregoing facts show that the bill of exchange was drawn in New York by Edward Jolles Co., Inc., in their own favor and against the defendant; that the drawer received the amount of the draft in New York and indorsed it in blank; that the indorsement had no date; that the

drawee, that is, the defendant, accepted the draft in Porto Rico in the possession of the plaintiff bank, and that the plaintiff introduced the draft in evidence at the trial.

The first question is whether the law of New York state or the law of Porto Rico is applicable.

We quote from Ruling Case Law:  ·

"The question arises in respect of negotiable instruments more frequently probably than with respect of any other sort of contract, whether the law of one place or of another shall be referred to in determining the rights of the parties thereto. The question is properly considered in regard to the particular right or duty involved, but a few of the major principles are of such general importance and operation as to be entitled to mention at the outset. Three propositions are said to be firmly established, to wit: 1. All matters bearing on the execution, the interpretation, and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made; 2. All matters connected with its performance, including presentation, notice, demand, etc., are regulated by the law of the place where the contract, by its terms, is to be performed; 3. All matters respecting the remedy to be pursued, including the bringing of suits and the service of process, depend on the law of the place where the action is brought. These rules have been generally adopted by all the courts in determining what law shall govern in regard to foreign instruments." 3 R.C.L. pp. 856–857.

In accordance with the law of New York a bill of exchange drawn payable to the drawer is valid. According to Ruling Case Law, volume 3, page 877, "Ordinarily, a bill of exchange has, in the first instance, three parties to it, the drawer, the drawee and the payee. It is not unusual, however, for the drawer to make the bill payable to his own order, and then indorse it and put it into circulation."

As regards the indorsement, according to the following jurisprudence, the law of New York should also govern.

"The authorities are not entirely harmonious on the question whether the validity of the transfer of commercial paper is to be determined by the *lex loci contractus,* by the *lex loci solutionis,* or by the *lex fori.* The general rule is, inasmuch as the indorsement

of a bill of exchange or a promissory note is an independent contract, that the validity of the indorsement and the liability of the indorser thereunder depend upon the law of the place where the indorsement is made, and not upon the law of the place where the bill or note is payable, or where suit thereon is brought.'' 3 R.C.L. 966.

Such being the case, it follows that the indorsement in blank, without date, was valid and conveyed the ownership of the draft to the holder, the plaintiff; therefore, payment made to a person other than the holder or his duly authorized representative does not extinguish the obligation assumed by the debtor, in this case the drawee who accepted the draft. Section 1130 of the Civil Code.

''To pass title to a bill or a note in those cases where indorsement is necessary no particular phraseology is essential. The bare signature of the transferor suffices for the purpose.'' 3 R.C.L. 966.

''A blank indorsement consists in the bare signature of the payee or holder of the instrument. A bill or note indorsed in blank is transferable by delivery only, and so long as the indorsement continues in blank it makes the bill or note in effect payable to bearer.'' 3 R.C.L. 970.

''A negotiable instrument indorsed in blank is presumed to have been so indorsed on the day of its date.'' 3 R.C.L. 971.

See also the Law of Negotiable Instruments. Terry, Uniform State Law Annotated, page 57 *et seq.,* and 8 C. J. 105 *et seq.*

Now, if the *lex loci solutionis* is applicable, as the appellant contends, and it should be concluded that the law of Porto Rico governs in determining the effect of the indorsement, the question would arise as to whether, the indorsement being without date, the ownership should not be considered as conveyed, but that it was only a commission to collect. This same question came up in the case of *Noriega & Alvarez* v. *Cruz & Co., Ltd.,* decided July 14, 1924, *ante,* p. 530, but a final determination of the point was postponed until some case of more importance should ''serve as a stimulus to more thorough investigation by counsel of the subject matter.'' In point of fact this is not a ''case

of more importance" as contemplated by the court. Counsel here consider the question superficially and, besides, it is not necessary to decide it in order to settle the controversy, for even admitting that the ownership was not conveyed, it would follow that the plaintiff bank which held the instrument was commissioned by Edward Jolles & Co., Inc., to collect it and had authority to bring the suit.

The entire matter is reduced to whether or not the evidence showed that the defendant paid Edward Jolles & Co., Inc.

The deposition of Aronowitz and the letter of Rubinstein do not show in an authentic and indisputable manner the authority of Rubinstein to receive the amount of the draft; therefore, its payment by the defendant to Rubinstein can not be considered as payment to Edward Jolles & Co., Inc.

Whatever may be the view taken of the matter, therefore, whether the law of New York or that of Porto Rico be applied, the judgment appealed from must be

*Affirmed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.